UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| PHILLIPS PETROLEUM COMPANY VENEZUELA LIMITED, and CONOCOPHILLIPS PETROZUATA, B.V., | : : : : | |
| Plaintiffs, | : : | Case No. 1:26-cv-04286-VEC |
| v. | : : | |
| PETRÓLEOS DE VENEZUELA, S.A., PDVSA PETRÓLEO, S.A., and CORPOGUANIPA, S.A., | : : : : | |
| Defendants. | : : | |

_____/   :

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), Defendants Petróleos de Venezuela, S.A. ("PDVSA"); PDVSA Petróleo, S.A. ("PPSA"); and Corpoguanipa, S.A. ("Corpoguanipa") (together, "Defendants"), by and through undersigned counsel, hereby submit their Memorandum of Law in Support of Defendants' Motion to Dismiss, and state the following in support.

## TABLE OF CONTENTS

    **Page**

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iv

INTRODUCTION ................................................................................................................... 1

BACKGROUND AND ALLEGATIONS ................................................................................ 3

I.     Background Relevant to Plaintiffs' Improper Service of Process ..................................... 3

II.    Background and Allegations Relevant to Plaintiffs' Failure to State a Claim .................. 6

LEGAL STANDARD ............................................................................................................. 7

ARGUMENT ......................................................................................................................... 8

I.     Plaintiffs Did Not Properly Serve Defendants Under the FSIA ..................................... 10

    A.    A Court May Not Order Alternative Service Under § 1608(b)(3) Unless Alternative Service Under § 1608(b)(2) Cannot Be Made ..................................... 12

    B.    A Court May Not Order Alternative Service Under § 1608(b)(3)(C) Unless It Finds That Alternative Service May Not Proceed Under § 1608(b)(3)(A) and § 1608(b)(3)(B) ................................................................................................... 14

    C.    Alternative Service Efforts "Directed by Order of the Court" Under § 1608(b)(3)(C) Cannot Precede the Order Directing Them or Omit Service of the Translated Summons and Complaint .................................................................... 15

II.    FSIA Service on PPSA and Corpoguanipa Is Necessarily Defective .............................. 17

III.   Plaintiffs Allege an Illegal and Unenforceable Settlement Agreement ........................... 19

    A.    Plaintiffs Allege an Invalid and Expired OFAC License ..................................... 19

    B.    The Court Cannot Enforce an Agreement to Transfer Money from an SDN That Is Illegal Under Federal Law on the Face of the Complaint ................................... 23

    C.    Plaintiffs Fail to Plead the Existence of a Valid Contract or Breach by Defendants ............................................................................................................ 24

CONCLUSION ...................................................................................................................... 25

CERTIFICATE OF COMPLIANCE ............................................................................................ 27

CERTIFICATE OF SERVICE .................................................................................................... 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angellino v. Royal Family Al-Saud*,
  688 F.3d 771 (D.C. Cir. 2012)..................................................................................... 12

*Boddie v. Schnieder*,
  105 F.3d 857 (2d Cir. 1997) ......................................................................................... 7

*Byrd v. Republic of Honduras*,
  613 F. App'x 31 (2d Cir. 2015) ................................................................................... 11

*Cardno Me Ltd. v. Central Bank of Iraq*,
  No. 26-cv-00052-MMG, 2026 WL 1949470 (S.D.N.Y. July 6, 2026) ............................. 16–17

*Cassano v. Altshuler*,
  186 F. Supp. 3d 318 (S.D.N.Y. 2016) ........................................................................... 7

*Concord Reinsurance Co. v. Caja Nacional de Ahorro y Seguro*,
  No. 93-cv-06606-JSM, 1994 WL 86401 (S.D.N.Y. Mar. 16, 1994) ......................................... 8

*Cortez Byrd v. Corporacion Forestal y Indus. de Olancho, S.A.*,
  974 F. Supp. 2d 264 (S.D.N.Y. 2013) ........................................................................... 11

*Crescent Petroleum Co. Int'l Ltd. v. Nat'l Iranian Oil Co.*,
  No. 22-cv-01361-JMC, 2024 WL 1885498 (D.D.C. Apr. 30, 2024) ....................................... 13

*Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A.*,
  No. 03 CIV. 9141(PKL), 2004 WL 1933621 (S.D.N.Y. Aug. 30, 2004)................................. 23

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003)..................................................................................................... 18

*Dresser-Rand Co. v. Petróleos de Venezuela, S.A.*,
  439 F. Supp. 3d 270 (S.D.N.Y. 2020) ........................................................................ 22–23

*Evans v. Evans*,
  273 A.D. 895, 77 N.Y.S.2d 320 (App. Div. 1948) ....................................................... 16

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
  No. 90-cv-07360-JSM, 1992 WL 296434 (S.D.N.Y. Oct. 6, 1992).......................................... 9

*Gristede's Operating Corp. v. Scarsdale Shopping Ctr. Assocs., LLC*,
  176 A.D.3d 1185, 111 N.Y.S.3d 400 (2019) .............................................................. 24

*Hawkeye Gold, L.L.C. v. China Nat'l Materials Indus. Imp. & Exp. Corp.*,
 No. 4:16-cv-00355-JAJ-SBJ, 2019 WL 13043582 (S.D. Iowa Oct. 15, 2019) ....................... 13

*Hawkeye Gold, L.L.C. v. China Nat'l Materials Indus. Imp. & Exp. Corp.*,
 No. 4:16-cv-00355-JAJ-SBJ, 2020 WL 11028006 (S.D. Iowa Oct. 22, 2020) ....................... 14

*Hurd v. Hodge*,
 334 U.S. 24 (1948) ................................................................................................................ 23

*In re Old DDUS, Inc.*,
 659 B.R. 810 (Bankr. S.D.N.Y. 2024) ................................................................................... 16

*In re Terrorist Attacks on Sept. 11, 2001*,
 No. 03-cv-09848, 2022 WL 1088567 (S.D.N.Y. Apr. 5, 2022) ............................................. 16

*Int'l Audiotext Network, Inc. v. AT & T Co.*,
 62 F.3d 69 (2d Cir. 1995) ........................................................................................................ 8

*Kaiser Steel Corp. v. Mullins*,
 455 U.S. 72 (1982) ............................................................................................................. 9, 23

*Khan v. Khan*,
 360 F. App'x 202 (2d Cir. 2010) ......................................................................................... 7–8

*Klein v. United States*,
 278 F.R.D. 94 (W.D.N.Y. 2011) ........................................................................................... 16

*Kornea v. Miller*,
 797 F. Supp. 3d 295 (S.D.N.Y. 2025) ................................................................................... 23

*Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*,
 179 F.3d 523 (7th Cir. 1999) ................................................................................................. 22

*OKKO Bus. PE v. Lew*,
 133 F. Supp. 3d 17 (D.D.C. 2015) ......................................................................................... 21

*Republic of Sudan v. Harrison*,
 587 U.S. 1 (2019) ................................................................................................................... 12

*Rice Corp. v. Grain Bd. of Iraq*,
 No. 2:06-cv-1516-GEB-DAD, 2006 WL 3834273 (E.D. Cal. Dec. 29, 2006) ....................... 15

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*,
 23 F.4th 1036 (D.C. Cir. 2022) .............................................................................................. 13

*Simons v. Lycee Francais De New York*,
 No. 03-cv-04972-LAK, 2003 WL 22295360 (S.D.N.Y. Oct. 7, 2003) ................................... 12

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
   230 F. Supp. 3d 290 (S.D.N.Y. 2017) ....................................................................... 9, 24

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
   425 F.3d 119 (2d Cir. 2005) ..................................................................................... 8, 22

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988)....................................................................................................... 13

*Water Splash, Inc. v. Menon*,
   581 U.S. 271 (2017)........................................................................................................ 13

*Yakob v. Lalav Grp. of Cos.*,
   No. 25-cv-04286-AT-SN, 2025 WL 2307573 (S.D.N.Y. Aug. 11, 2025) .............................. 18

*Zevon v. Dep't Stores Nat'l Bank*,
   No. 12-CV-4970 CM, 2013 WL 3479432 (S.D.N.Y. July 8, 2013)........................................ 22

**Statutes and Regulations**

28 U.S.C. § 1603 ................................................................................................................ 18

28 U.S.C. § 1608 ........................................................................... 1, 5, 8, 10–17, 19

50 U.S.C. § 1702 ................................................................................................................ 22

31 C.F.R. § 591.309 ........................................................................................................... 21

31 C.F.R. § 591.407 ..................................................................................................... 7, 9, 21

**Rules and Other Authorities**

Fed. R. Civ. P. 4 ........................................................................................................ 10, 17–19

Fed. R. Civ. P. 12 ................................................................................................................... 7

Exec. Order No. 13850, 83 Fed. Reg. 55,243 (Nov. 1, 2018) ......................................... 7

Exec. Order No. 13884, 84 Fed. Reg. 38,843 (Aug. 5, 2019) .................................. 9, 21–22, 25

*Legality of the Int'l Agreement with Iran & Its Implementing Exec. Ords.*, 4A U.S. Op. Off.
   Legal Counsel 302 (1981)........................................................................................... 22

U.S. Dept. of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850
   (Jan. 28, 2019), *available at* https://sanctionssearch.ofac.treas.gov/Details.aspx?id=26367 ..... 6

U.S. Dep't of Treasury, Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de
   Venezuela, S.A. (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594 .......... 7

**INTRODUCTION**

Plaintiffs Phillips Petroleum Company Venezuela Limited and ConocoPhillips Petrozuata, B.V. (together, "Plaintiffs") sued Defendants in the Supreme Court of the State of New York, County of New York (the "New York Supreme Court"), on October 14, 2025. ECF No. 1-1. Plaintiffs' Complaint for Breach of Contract (the "Complaint") pleads two claims for breach of contract against Defendants arising out of the alleged breach of a 2018 settlement agreement (the "Settlement Agreement") related to an arbitration between the parties conducted by the International Chamber of Commerce. *See id.* at ¶¶ 48–57. The Complaint should be dismissed for insufficient service of process under Rule 12(b)(5) and failure to state a claim under Rule 12(b)(6).

First, the Complaint should be dismissed because Plaintiffs never effected valid service of process on Defendants. After filing suit, Plaintiffs commenced alternative service efforts for which they later sought retroactive permission from the New York Supreme Court. In a series of orders that followed, the New York Supreme Court purported to authorize Plaintiffs' alternative service efforts under the Foreign Sovereign Immunities Act's ("FSIA") provisions for service of process on an agency or instrumentality of a foreign state.

The FSIA "catchall" provision invoked by Plaintiffs allows service of process on an agency or instrumentality of a foreign state "as directed by order of the court consistent with the law of the place where service is to be made," but only if every other preceding statutory option is unavailable. 28 U.S.C. § 1608(b)(3)(C). Plaintiffs' alternative service efforts did not comply with the FSIA's catchall provision for several reasons. First, FSIA service is hierarchical, and service "as directed" by the court is only available as a last resort once other alternatives under the statute have been exhausted. Here, Plaintiffs did not demonstrate, and the New York Supreme Court did not determine, that all required statutory alternatives were unavailable to Plaintiffs. Second, the

statutory text contemplates a plaintiff effectuating alternative service pursuant to a court order directing such service—not retroactive judicial approval of past service efforts undertaken without judicial authorization. Finally, PPSA and Corpoguanipa are not agencies or instrumentalities of a foreign state covered by the FSIA's service statute, so the FSIA did not provide a legal basis for the New York Supreme Court to deem them served. The Complaint should be dismissed against all Defendants for improper service of process.

Second, Plaintiffs cannot state a claim for relief where they lack the license required to enforce the Settlement Agreement. While Plaintiffs plead that they have a Department of Treasury Office of Foreign Assets Control ("OFAC") license authorizing performance under the Settlement Agreement, the license Plaintiffs incorporate into the Complaint is both superseded by subsequent sanctions regulations and expired. Current regulations encompassing Defendants prohibit entry into a settlement agreement and prohibit payments pursuant to a settlement agreement, unless authorized by a current, specific license issued by OFAC. Plaintiffs do not allege possession of such a license, but instead allege possession of a superseded and expired license. Without a valid OFAC license, the Settlement Agreement is prohibited by and illegal under federal law. This Court cannot enforce a contract that is illegal under federal law.

Without an OFAC license, Plaintiffs fail to plead the existence of a valid contract, and thus fail to plead the first element of their breach of contract claims. Finally, the Settlement Agreement expressly provides that it must comply with federal regulations and that a party need not take action it considers, in its sole discretion, to violate any such regulations. Plaintiffs' pleadings show that Defendants' unlicensed payments would have resulted in a violation of OFAC sanctions. Thus, Plaintiffs have not pled that Defendants breached the terms of the Settlement Agreement by not continuing those payments.

2

## BACKGROUND AND ALLEGATIONS

**I.      Background Relevant to Plaintiffs' Improper Service of Process.**

Plaintiffs filed their Complaint against Defendants in the New York Supreme Court on October 14, 2025. ECF No. 1-1. The Complaint pleads two claims for breach of contract against Defendants arising out of the alleged breach of the parties' Settlement Agreement. *See id.* at ¶¶ 48–57. The New York Supreme Court docket registered no substantive activity after the Complaint's filing until Plaintiffs moved for alternative service (the "Service Motion") on March 6, 2026—nearly five months later. The Service Motion is attached as Exhibit A. Plaintiffs supported the Service Motion with the Affirmation of Zoe Bunnell (the "First Bunnell Affirmation"), attached as Exhibit B.

The First Bunnell Affirmation recounted various efforts at alternative service which Plaintiffs had already undertaken when they filed the Service Motion. Specifically, Plaintiffs had attempted to send the "Service Materials" in this case—defined by Plaintiffs as "(i) the issued summons as to the PDVSA Entities; (ii) the complaint; (iii) the corporate disclosure statement; and (iv) translated copies and accompanying certificates of translation of these documents," Ex. B at ¶ 4—to the following recipients by the following methods:

- On January 15, 2026, by commercial courier to PDVSA representatives Hilda Cabeza, Manuel Fonseca, Scarlet Moran, and Rodolfo Porro Aletti in Venezuela, although these service packets were rejected by United States Customs and Border Protection later that week. *Id.* at ¶¶ 4–5.

- On January 15, 2026, by commercial courier to PDVSA "Ad Hoc Board" representatives[1] Horacio Francisco Medina Herrera and Julian Cardenas Garcia in Hollywood, Florida, although these service packets were not delivered. *Id.* at ¶¶ 6–7.

- On January 15, 2026, by email to Hilda Cabeza, Manuel Fonseca, Scarlet Moran, Rodolfo Porro Aletti, Horacio Francisco Medina Herrera, and Julian Cardenas Garcia, although these emails were rejected as undeliverable. *Id.* at ¶ 9.

- On January 15, 2026, by email to nineteen attorneys believed by Plaintiffs to have served as litigation counsel for Defendants in other matters, although some of these attorneys responded that they did not represent Defendants or were not authorized to accept service. *Id.* at ¶ 11.

- On February 4, 2026, by commercial courier to Horacio Francisco Medina Herrera and Julian Cardenas Garcia in Hollywood, Florida, with successful delivery on February 9, 2026. *Id.* at ¶ 8.

- On February 4, 2026, by commercial courier and email to Julian Cardenas Garcia in Texas, with successful delivery by the courier on February 9, 2026. *Id.* at ¶ 10.

In their subsequent Service Motion, Plaintiffs suggested that they had been unable to effectuate service as contemplated by the Settlement Agreement, which called for service by mail and email on PDVSA representative Hilda Cabeza. *See* Ex. A at 6–7. Plaintiffs therefore "move[d] for an order deeming service complete, or alternatively for authorization to serve Respondents

---

[1] Horacio Francisco Medina Herrera and Julian Cardenas Garcia are not representatives of PDVSA, but rather individuals connected with the so-called "PDVSA Ad Hoc Board" in the United States. *See* FARA Registration Supplemental Statements at https://efile.fara.gov/docs/7023-Supplemental-Statement-20251025-9.pdf and https://efile.fara.gov/docs/7590-Supplemental-Statement-20251229-1.pdf. The "PDVSA Ad Hoc Board" is not recognized by Defendant PDVSA and has no authority to act, particularly following the US recognition of Venezuelan President Delcy Rodríguez as Head of State.

4

through their representatives as set forth herein and in the [Proposed Order], pursuant to 28 U.S.C. §1608(b)(3)(C)." *Id.* (second alteration in original).

On April 21, 2026, the New York Supreme Court entered its Ex-Parte Order Authorizing Alternative Service Pursuant to 28 U.S.C. § 1608(b)(3)(C) (the "First Service Order"), attached as Exhibit C. In the First Service Order, the court granted the Service Motion based on Plaintiffs' prior service efforts, "contingent on" Plaintiffs serving the First Service Order by commercial courier to Horacio Francisco Medina Herrera and Julian Cardenas Garcia, and by email to Julian Cardenas Garcia and thirteen attorneys Plaintiffs connected to PDVSA. *See* Ex. C at 2–3. The court held that "[d]elivery of this [First Service] Order by the means described above will constitute such service on and actual notice to" Defendants under § 1608(b)(3)(C). *Id.* at 3.

On April 27, 2026, Plaintiffs filed an Affirmation of Service (the "Second Bunnell Affirmation"). In the Second Bunnell Affirmation, attached as Exhibit D, Plaintiffs confirmed that they had served the First Service Order by commercial courier and email, consistent with the First Service Order, to the recipients specified by the New York Supreme Court. Ex. D at ¶¶ 3–4.

On May 9, 2026, the New York Supreme Court docketed its Decision + Order on Motion (the "Second Service Order"), attached as Exhibit E. In the Second Service Order, the court stated that "[a]s 28 U.S.C. § 1608(b)(1) and (2) were unavailable, §1608(b)(3) is applicable," identifying the "question here [as] whether plaintiffs' service was sufficient actual notice under §1608(b)(3)." Ex. E at 3. The court concluded that "service was effective" under the circumstances. *Id.* at 4.

The New York Supreme Court did not consider whether alternative service was possible under provisions of 28 U.S.C. § 1608(b)(3) other than the catchall provision, and it did not explain why service under 28 U.S.C. § 1608(b)(2) was "unavailable." *See id.*

PDVSA removed the Complaint to federal court on May 21, 2026. ECF No. 1. In the Notice

5

of Removal, Defendants expressly reserved the right to contest the adequacy of service of process. *See id.* at ¶¶ 3–4.

## II.    Background and Allegations Relevant to Plaintiffs' Failure to State a Claim.

Plaintiffs allege that OFAC "specifically licensed performance of obligations under the Settlement Agreement." ECF No. 1-1 at ¶ 42 ("[OFAC] had specifically licensed performance of obligations under the Settlement Agreement, *see, e.g.*, *Phillips Petroleum Co. Venezuela Ltd. v. Petróleos de Venezuela, S.A.*, No. 19-342-LPS (D. Del. 2019), Dkt. No. 42 at 24)."). Plaintiffs cite to District of Delaware Case No. 19-342-LPS, ECF No. 42 at 24, which states, "OFAC granted ConocoPhillips a license to collect payments from the Republic pursuant to a settlement agreement." The cited opinion, in turn, cites a memorandum filed by Plaintiffs. *Id.* at ECF No. 13 at 2 ("Before ConocoPhillips and PDVSA entered into an agreement, on July 24, 2018, ConocoPhillips obtained a specific license from OFAC authorizing execution of an agreement with PDVSA and performance of the obligations thereunder."). The memorandum cites to a declaration exhibit that contains a copy of OFAC License No. VENEZUELA-2018-353747-1. *See id.* at ECF No. 14-1 (attached as Exhibit F). That license was issued on July 24, 2018, and expired on July 31, 2020. The license was renewed on April 25, 2019, with the same 2020 expiration date. *Id.* ECF No. 14-3 (attached as Exhibit G).

On January 28, 2019, OFAC designated PDVSA as a Specially Designated National ("SDN") for purposes of the United States's Venezuela sanctions.[2] The Treasury Secretary explained that PDVSA was designated as an SDN "to support Interim President Juan Guaidó, the National Assembly, and the Venezuelan people's efforts to restore their democracy," and to "prevent further diverting of Venezuela's assets by Maduro and preserve these assets for the people

---

[2] *See* U.S. Dept. of Treasury, Determination Pursuant to Section 1(a)(i) of Executive Order 13850 (Jan. 28, 2019), *available at* https://sanctionssearch.ofac.treas.gov/Details.aspx?id=26367.

of Venezuela."[3]

As a result of the designation of PDVSA as an SDN, <u>Plaintiffs were prohibited from receiving any funds from PDVSA, without a license from OFAC</u>. Exec. Order No. 13850 §§ 1(a), 4(b), 83 Fed. Reg. 55,243 (Nov. 1, 2018) ("E.O. 13850") ("The prohibitions in section 1 of this order include . . . the receipt . . . of funds . . . from any such person."). And effective November 22, 2019, OFAC significantly amended and expanded the Venezuelan Sanctions Regulations. Among other things, OFAC prohibited "the entry into a settlement agreement . . . or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked" under the relevant executive orders, absent "a specific license issued by OFAC." 31 C.F.R. § 591.407.

## LEGAL STANDARD

Rule 12(b)(5) provides for dismissal of a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010).

Rule 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> "In order to survive dismissal, a plaintiff must assert a cognizable claim and allege facts that, if true, would support such a claim." *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997). In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the

---

[3] *See* U.S. Dep't of Treasury, Treasury Sanctions Venezuela's State-Owned Oil Company Petroleos de Venezuela, S.A. (Jan. 28, 2019), https://home.treasury.gov/news/press-releases/sm594.

complaint relies and which are integral to the complaint. *Internat'l Audiotext Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam). [The court is] not obliged to accept the allegations of the complaint as to how to construe such documents, but at this procedural stage, . . . should resolve any contractual ambiguities in favor of the plaintiff. *Id.*

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

## ARGUMENT

Defendants have not been properly served with process. To the extent that the FSIA applies to Defendants,[4] the alternative service ordered by the New York Supreme Court under § 1608(b)(3)(C) is inconsistent with the statutory text for at least three reasons. *See Concord Reinsurance Co. v. Caja Nacional de Ahorro y Seguro*, No. 93-cv-06606-JSM, 1994 WL 86401, at *3 (S.D.N.Y. Mar. 16, 1994) (noting "courts' admonitions that the terms of § 1608 are to be strictly enforced"). First, the FSIA required Plaintiffs to try to serve Defendants pursuant to the Hague Convention under § 1608(b)(2) before seeking alternative service under § 1608(b)(3). Second, Plaintiffs were required to exhaust other service alternatives under § 1608(b)(3)(A) and § 1608(b)(3)(B) before seeking alternative service under § 1608(b)(3)(C). Third, alternative service efforts under § 1608(b)(3)(C) may not precede the order authorizing them, and the New York Supreme Court did not direct Plaintiffs to serve the requisite translated copy of the summons and Complaint in either the First or Second Service Orders. Additionally, PPSA and Corpoguanipa are not "agencies or instrumentalities of a foreign state" covered by the FSIA, which renders FSIA service on those parties defective. Because Plaintiffs cannot meet their burden to show proper service on Defendants, *see Khan*, 360 F. App'x at 203, the Court should dismiss the Complaint for

---

[4] FSIA "catchall" provision service on PPSA and Corpoguanipa is inherently deficient because the FSIA does not apply to those entities. *Infra*, Part II. Because the New York Supreme Court purported to authorize FSIA service on all Defendants, however, this brief presents argument under the FSIA with respect to all Defendants, *infra*, Part I, followed by argument that the FSIA does not apply to PPSA and Corpoguanipa, *infra*, Part II.

insufficient service of process on Defendants, *see First City, Texas-Houston, N.A. v. Rafidain Bank*, No. 90-cv-07360-JSM, 1992 WL 296434, at *1 (S.D.N.Y. Oct. 6, 1992) ("It is well settled that absent effective service, a court lacks jurisdiction over the defendant and all actions pertaining to such defendants . . . are void.").

The Complaint should also be dismissed because OFAC regulations prohibit entry into a settlement agreement and prohibit payments pursuant to a settlement agreement with Defendants, unless authorized by a specific OFAC license. *See* Exec. Order No. 13884 § 3(b), 84 Fed. Reg. 38,843 (Aug. 5, 2019) ("E.O. 13884") (prohibiting receipt of funds from any SDN); 31 C.F.R. § 591.407, 84 Fed. Reg. 64415-02 (Nov. 22, 2019) ("entry into a settlement agreement . . . is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to this part."). Plaintiffs incorporate into the Complaint an expired and invalid OFAC license that does not authorize the Settlement Agreement or payment thereunder. ECF No. 1-1 at ¶ 42; Exs. F, G (entered before E.O. 13884 and § 591.407, and expired). Without a valid OFAC license, the Settlement Agreement is invalid and illegal under federal law. *E.g.* 31 C.F.R. § 591.407 ("the entry into a settlement agreement … is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to this part"). This Court cannot enforce a contract that is illegal under federal law. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83–84 (1982) ("It is also well established, however, that a federal court has a duty to determine whether a contract violates federal law before enforcing it.").

By pleading an expired and invalid OFAC license, Plaintiffs also fail to plead the existence of a valid contract. *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 302 (S.D.N.Y. 2017) ("Under New York law, the elements of a breach-of-contract claim are: (1) the existence of a valid contract between the parties . . . ."). Additionally, in a provision attached as

9

Exhibit 1 to the Declaration of Kathryn M. Decker, the Settlement Agreement expressly provides that a party need not undertake performance that it considers, in its sole discretion, to violate federal regulations. *See* Decker Decl. Ex. 1 § 25.0. Because Plaintiffs' pleadings demonstrate that continued payments under the Settlement Agreement would have resulted in a violation of OFAC sanctions, Plaintiffs have not pled that Defendants breached the Settlement Agreement. Plaintiffs have failed to allege the elements of their breach of contract claims.

## I.      Plaintiffs Did Not Properly Serve Defendants Under the FSIA.

The proceedings in the New York Supreme Court were insufficient to properly serve Defendants with process under the FSIA. The New York Supreme Court purported to authorize alternative service under FSIA § 1608(b)(3)(C), and Plaintiffs purported to comply with the New York Supreme Court's limited directives, but—even if the FSIA applies to all Defendants[5]—those proceedings were inconsistent with the statutory text.

Under Rule 4(j), an agency or instrumentality of a foreign state "must be served in accordance with" 28 U.S.C. § 1608, which is the FSIA provision governing service of process. *See* Fed. R. Civ. P. 4(j). The FSIA's service statute distinguishes between service on foreign states under § 1608(a) and service on agencies or instrumentalities of foreign states under § 1608(b). This case concerns only the latter. The FSIA provides the following hierarchical framework for service on an agency or instrumentality of a foreign state in § 1608(b):

> **§ 1608(b)** Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:
>
> > **(1)** by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or
> >
> > **(2)** if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any

---

[5] *See supra*, n.4.

10

other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

**(3)** if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

> **(A)** as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
>
> **(B)** by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
>
> **(C)** as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b). A plaintiff must follow this hierarchical framework in descending order. *See Cortez Byrd v. Corporacion Forestal y Indus. de Olancho, S.A.*, 974 F. Supp. 2d 264, 273 (S.D.N.Y. 2013), *aff'd sub nom. Byrd v. Republic of Honduras*, 613 F. App'x 31 (2d Cir. 2015) ("Section 1608(a) and (b) provide a hierarchy of methods to effectuate service of a summons and complaint on a foreign government or its instrumentality. Thus, a plaintiff may resort to a subsequent method of service only after the prior method has failed.").

Here, the New York Supreme Court reasoned that service could not be completed under the parties' special arrangement in § 1608(b)(1), so it purported to authorize service under the catchall provision in § 1608(b)(3)(C). For the reasons discussed below, however, the New York Supreme Court misinterpreted the FSIA by (1) bypassing § 1608(b)(2), which required Plaintiffs to attempt service under the Hague Convention before seeking relief under § 1608(b)(3), (2) disregarding § 1608(b)(3)(A) and § 1608(b)(3)(B), which must be ruled out before permitting service under the catchall provision in § 1608(b)(3)(C); and (3) purporting to authorize Plaintiffs' past service efforts, rather than directing future service efforts involving the translated summons

11

and Complaint.

### A.    A Court May Not Order Alternative Service Under § 1608(b)(3) Unless Alternative Service Under § 1608(b)(2) Cannot Be Made.

Service was deficient under the FSIA because the three alternatives in § 1608(b) must be exhausted in order. *See Republic of Sudan v. Harrison*, 587 U.S. 1, 19 (2019) (noting that FSIA service "demands adherence to strict requirements"); *Angellino v. Royal Family Al-Saud*, 688 F.3d 771, 773 (D.C. Cir. 2012) ("[A] plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." (quotation omitted)); *see also Simons v. Lycee Francais De New York*, No. 03-cv-04972-LAK, 2003 WL 22295360, at *2 (S.D.N.Y. Oct. 7, 2003) (explaining that "[i]f service cannot be effected in either of these ways [under § 1608(b)(1) and § 1608(b)(2)], it may be accomplished" under § 1608(b)(3)). Plaintiffs did not show that service under § 1608(b)(2) could not be made before seeking relief under § 1608(b)(3), so the New York Supreme Court lacked authority to order alternative service under § 1608(b)(3).

The FSIA provides that alternative service under § 1608(b)(3) is only available "if service cannot be made under paragraphs (1) or (2)" of § 1608(b). *See* 28 U.S.C. § 1608(b)(3) (emphasis added). Here, the New York Supreme Court found that service could not be completed under the parties' special arrangement for purposes of § 1608(b)(1). *See* Ex. E at 2. With respect to § 1608(b)(2), Plaintiffs have never attempted service under the Hague Convention and merely suggested in the Service Motion that "[b]ecause there exists a special arrangement between the parties, section 1608(b)(2) does not apply." Ex. A at 8 n.4. However, Plaintiffs provided no authority for this position. *See id.* The New York Supreme Court stated in its Second Service Order that § 1608(b)(2) "[was] unavailable," but it did not explain why. Ex. E. at 3.

Plaintiffs should have utilized § 1608(b)(2) service of process under the Hague

Convention, before attempting service under § 1608(b)(3). "[T]he Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)). To comply with the Hague Convention, a plaintiff must (1) attempt service through Venezuela's central authority, (2) wait a period of no less than six months, (3) make every reasonable effort to obtain a certificate of service from Venezuela's central authority, and (4) without such a certificate, serve process in a manner consistent with Venezuelan law. *See Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1038–43 (D.C. Cir. 2022).

Venezuela is a signatory to the Hague Convention, so service of process under the Hague Convention should have been exhausted or shown to be unavailable before Plaintiffs and the New York Supreme Court proceeded to § 1608(b)(3). *See Hawkeye Gold, L.L.C. v. China Nat'l Materials Indus. Imp. & Exp. Corp.*, No. 4:16-cv-00355-JAJ-SBJ, 2019 WL 13043582, at *7 (S.D. Iowa Oct. 15, 2019) ("[I]f service pursuant to the Hague Service Convention has not even been attempted, there is no showing that service 'cannot be made' pursuant to § 1608(b)(2)."). But Plaintiffs did not attempt to comply with the Hague Convention here. *See generally* Ex. A; Ex. B.

The plain text of the FSIA requires ruling out service under § 1608(b)(2) before a court may permit alternative service under § 1608(b)(3), even when the parties have a special arrangement for service under § 1608(b)(1). *See, e.g.*, *Crescent Petroleum Co. Int'l Ltd. v. Nat'l Iranian Oil Co.*, No. 22-cv-01361-JMC, 2024 WL 1885498, at *5 (D.D.C. Apr. 30, 2024) (analyzing service under § 1608(b)(2) after finding that service under § 1608(b)(1) special arrangement was unsuccessful). Plaintiffs failed to follow that process here. The New York Supreme Court did not have statutory authority to permit alternative service of process under

13

§ 1608(b)(3), let alone § 1608(b)(3)(C), so the Complaint should be dismissed for insufficient service of process.

### B. A Court May Not Order Alternative Service Under § 1608(b)(3)(C) Unless It Finds That Alternative Service May Not Proceed Under § 1608(b)(3)(A) and § 1608(b)(3)(B).

Service was also deficient because § 1608(b)(3)(C)'s catchall provision is only available to a plaintiff if alternative service cannot be completed under § 1608(b)(3)(A) or § 1608(b)(3)(B). Plaintiffs and the New York Supreme Court disregarded the FSIA's statutory order of operations by failing to view § 1608(b)(3)(C) as a last resort. Service of process purportedly effected under § 1608(b)(3)(C) is therefore ineffectual.

Section 1608(b)(3) provides three alternative methods of service:

> **(3)** if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—
>
> > **(A)** as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
> >
> > **(B)** by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
> >
> > **(C)** as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b). These methods of service are listed in decreasing order of formality, concluding with the wide-ranging catchall provision at issue here.

The three service alternatives in § 1608(b)(3) must be exhausted by a litigant in order. *See Hawkeye Gold, L.L.C. v. China Nat'l Materials Indus. Imp. & Exp. Corp.*, No. 4:16-cv-00355-JAJ-SBJ, 2020 WL 11028006, at *2 (S.D. Iowa Oct. 22, 2020) ("[F]rom the preferential hierarchy in § 1608(b), this court concludes that the alternatives listed in § 1608(b)(3)(A) and (B) must be

exhausted before allowing recourse to the 'catchall' in § 1608(b)(3)(C)."); *Rice Corp. v. Grain Bd. of Iraq*, No. 2:06-cv-1516-GEB-DAD, 2006 WL 3834273, at \*1 (E.D. Cal. Dec. 29, 2006) (authorizing service under § 1608(b)(3)(C) where "Plaintiff has not been able to effect service of process under § 1608(b)(1), (2), (3)(a) or (b)").

Here, Plaintiffs and the New York Supreme Court jumped straight to service under § 1608(b)(3)(C) without addressing whether Plaintiffs could serve Defendants under § 1608(b)(3)(A) or § 1608(b)(3)(B). *See generally* Ex. A; Ex. C; Ex. E. Because the court lacked authority to order service of process under § 1608(b)(3)(C) where it did not first consider § 1608(b)(3)(A) or § 1608(b)(3)(B), Plaintiffs have not effectively served Defendants under the FSIA, and the Complaint must be dismissed.

### C. Alternative Service Efforts "Directed by Order of the Court" Under § 1608(b)(3)(C) Cannot Precede the Order Directing Them or Omit Service of the Translated Summons and Complaint.

Alternatively, even if the New York Supreme Court was empowered to authorize service of process under § 1608(b)(3)(C), the statutory procedure was not followed, so service remains insufficient. The FSIA's catchall provision requires "delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state . . . <u>as directed by order</u> of the court consistent with the law of the place where service is to be made." 28 U.S.C. § 1608(b)(3)(C) (emphasis added). Here, Plaintiffs' alternative service efforts involving delivery of the translated summons and Complaint all <u>preceded</u> the New York Supreme Court's First and Second Service Orders authorizing alternative service under § 1608(b)(3). The only task the New York Supreme Court assigned to Plaintiffs for service purposes was providing the First Service Order to certain individuals by mail and email. But the statute requires delivery of a translated summons and complaint "as directed by order of the court." Any attempt to retroactively "direct" past service attempts was invalid, as was any order directing future service efforts that did

15

not involve sending a translated copy of the relevant summons and complaint. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-cv-09848, 2022 WL 1088567, at *7 (S.D.N.Y. Apr. 5, 2022) ("Per § 1608(b)(3), notice shall be accompanied by a translation of the relevant documents.").

Under the plain text of the FSIA, alternative service efforts "as directed by order of the court" under § 1608(b)(3)(C) cannot precede the court order that authorizes them. As one court has explained:

> [A] service attempt initiated *before* a Court order authorizing it as acceptable alternative service cannot operate "as directed" by that Order under Section 1608(b)(3)(C). And the Court cannot *ex post facto* issue an Order conforming to Petitioner's existing service attempt so that Petitioner may later argue it effectuated service "as directed by order of the court." 28 U.S.C. § 1608 (b)(3)(C). Rather than preventing later challenges to the adequacy of service, this maneuver seems destined to invite one.

*Cardno Me Ltd. v. Central Bank of Iraq*, No. 26-cv-00052-MMG, 2026 WL 1949470, at *1 (S.D.N.Y. July 6, 2026). The course prohibited by the FSIA, as explained by the court in *Cardno Me Ltd.*, is precisely what the New York Supreme Court purported to do in its First and Second Service Orders.

Decisions interpreting alternative service regimes with materially similar language, such as Rule 4(f)(3)'s provision for alternative service "as the court orders," confirm that Defendants' reading of the FSIA is correct. *See In re Old DDUS, Inc.*, 659 B.R. 810, 831 (Bankr. S.D.N.Y. 2024) ("In the absence of an advance approval under Rule 4(f)(3) a defendant would have no way of knowing whether a particular form of service was purportedly valid. It would hardly be fair to allow service to be validated in hindsight and at the time when a default had already occurred."); *Klein v. United States*, 278 F.R.D. 94, 96 (W.D.N.Y. 2011) ("Rule (f)(3) specifically provides for service 'as the court orders.' That never occurred here, and this Court cannot retroactively sanction the service that was attempted, or 'order' it nunc pro tunc."); *Evans v. Evans*, 273 A.D. 895, 895, 77 N.Y.S.2d 320, 321 (App. Div. 1948) (action was "not properly commenced" where "plaintiff

16

failed to procure an order for substituted service, Civil Practice Act, §§ 230, 231, before serving the summons, complaint and motion papers on defendant in the State of Arkansas"). Here, Plaintiffs purported to serve the translated summons and Complaint prior to receiving the Court's direction, so their efforts were not "directed by order of the court" under § 1608(b)(3)(C). *See Cardno Me Ltd.*, 2026 WL 1949470, at *1.

The only action "directed by order of the court" under § 1608(b)(3)(C) in this case was the New York Supreme Court's requirement that Plaintiffs serve the First Service Order on certain individual and attorneys whom Plaintiffs had linked to Defendants. But service "as directed by order of the court" requires "delivery of a translated copy of the summons and complaint." 28 U.S.C. § 1608(b)(3). The New York Supreme Court did not require Plaintiffs to deliver the translated summons and Complaint to the recipients specified in the First Service Order, so it did not comply with the FSIA. That Plaintiffs transmitted those documents before the New York Supreme Court's various orders is immaterial. Because a court may not retroactively bless alternative service efforts under the FSIA that require judicial direction, and because the New York Supreme Court did not direct service of a translated copy of the summons and Complaint on Defendants, service of process was never effectuated under 28 U.S.C. § 1608(b)(3)(C). *See Cardno Me Ltd.*, 2026 WL 1949470, at *1. The Complaint should be dismissed for insufficient service of process.

## II.      FSIA Service on PPSA and Corpoguanipa Is Necessarily Defective.

Unlike PDVSA, PPSA and Corpoguanipa are not agencies or instrumentalities of a foreign state under the FSIA. As foreign corporations based in Venezuela—a signatory to the Hague Convention—PPSA and Corpoguanipa must be served in compliance with the Hague Convention. *See* Fed. R. Civ. P. 4(f)(1), 4(h)(2). Alternative service under the FSIA, as ordered by the New York Supreme Court at Plaintiffs' request, is therefore a legal nullity with respect to PPSA and

17

Corpoguanipa. Even if this Court rejects Defendants' other service arguments, PPSA and Corpoguanipa were deemed served under legal authority that does not apply to them, so the claims against them should be dismissed for insufficient service of process.

Unlike PDVSA, PPSA and Corpoguanipa are not agencies or instrumentalities of a foreign state. The FSIA defines an "agency or instrumentality of a foreign state" as any entity that (1) "is a separate legal person, corporate or otherwise"; (2) "is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof"; and (3) "is neither a citizen of a State of the United States . . . nor created under the laws of any third country." 28 U.S.C. § 1603(b). Here, Plaintiffs allege that PPSA and Corpoguanipa are subsidiaries of an agency or instrumentality, not agencies or instrumentalities themselves. *Compare* ECF No. 1-1 at ¶ 13 (alleging that PDVSA "is the state-owned oil company and instrumentality of Venezuela"), *with id.* at ¶¶ 14–15 (alleging that PPSA and Corpoguanipa are "compan[ies] incorporated under Venezuelan law" and "wholly owned subsidiar[ies] of PDVSA"). Nor do PPSA and Corpoguanipa contend that they are covered by the FSIA for purposes of service of process. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003) ("A corporation is an instrumentality of a foreign state under the FSIA only if the foreign state itself owns a majority of the corporation's shares."). The FSIA's service regime does not apply to PPSA and Corpoguanipa because they are foreign corporations for service purposes under Rule 4(h). *See Yakob v. Lalav Grp. of Cos.*, No. 25-cv-04286-AT-SN, 2025 WL 2307573, at *3 (S.D.N.Y. Aug. 11, 2025) (FSIA does not apply to service on "foreign corporation"). Instead, they must be served under the Hague Convention. *See* Fed. R. Civ. P. 4(f)(1), 4(h)(2).

Alternative service proceedings with respect to PPSA and Corpoguanipa proceeded under the FSIA in the New York Supreme Court. When Plaintiffs moved for alternative service, they

18

invoked the FSIA as authority to serve all "Respondents" without distinguishing between them. *See* Ex. A at 5. Plaintiffs discussed why the FSIA applies to PDVSA without addressing whether it also applied to PPSA and Corpoguanipa. *See id.* at 6 n.1. The New York Supreme Court followed Plaintiffs' lead. The court explained that "28 U.S.C. §1608(b) applies to PDVSA because it is a wholly owned 'agency or instrumentality' of the Bolivarian Republic of Venezuela"—without addressing the status of PPSA and Corpoguanipa. Ex. E at 1 n.1. The New York Supreme Court lumped PPSA and Corpoguanipa together with PDVSA for purposes of alternative service under the FSIA. *See id.* at 1–5.

PPSA and Corpoguanipa are not agencies or instrumentalities of a foreign state, so the FSIA cannot provide legal authority for serving them under Rule 4(j). *See* Fed. R. Civ. P. 4(j) (requiring service on "[a] foreign state or its political subdivision, agency, or instrumentality" to proceed under 28 U.S.C. § 1608). Instead, Plaintiffs are required to serve PPSA and Corpoguanipa under the Hague Convention. Alternative service under the FSIA on an entity not covered by the FSIA is inherently defective, so the Court should dismiss Plaintiffs' claims against PPSA and Corpoguanipa for improper service of process.

**III.    Plaintiffs Allege an Illegal and Unenforceable Settlement Agreement.**

**A.    Plaintiffs Allege an Invalid and Expired OFAC License.**

Plaintiffs correctly plead that they require a Department of Treasury OFAC license to receive payment under the Settlement Agreement. ECF No. 1-1 at ¶ 42. Plaintiffs' Complaint at paragraph 42 cites to a prior case where Plaintiffs attached OFAC licenses as exhibits. However, the licenses to which Plaintiffs cite expired on July 31, 2020. *See* Ex. F; Ex. G. In that same case, Plaintiffs explained in detail that a current, valid OFAC license is necessary to authorize payment under the Settlement Agreement:

On January 28, 2019, the Treasury Secretary designated PDVSA a Specially

Designated National ("SDN") under Executive Order 13850, prohibiting unlicensed transactions in PDVSA property. Concurrently, OFAC issued General License No. 12, authorizing performance of obligations on certain pre-existing arrangements with PDVSA through February 29, 2019. Accordingly, PDVSA continued to make scheduled payments through February 2019. Then, on April 25, 2019, ConocoPhillips obtained an amended specific license from OFAC authorizing continued performance of obligations under the Settlement Agreement through July 31, 2020.

***

The designation of PDVSA under Executive Order 13850 has never been an impediment to PDVSA's performance because payments to ConocoPhillips were specifically authorized by OFAC licenses. Payments made during 2018 through February 29, 2019 were authorized by OFAC License No. VENEZUELA-2018-353747-1 and the operation of General License 12. Performance of payment obligations arising in May, August and November 2019, and since, were authorized by OFAC License No. VENEZUELA-2018-353747-2. OFAC issued that amended specific license on April 25, 2019 and it expires on July 31, 2020.

*Phillips Petroleum Co. Venezuela Ltd. v. Petróleos de Venezuela, S.A.*, No. 19-342-LPS (D. Del. 2019), ECF No. 13 at 2–4 (footnotes omitted).[6] Thus, Plaintiffs' own words demonstrate the necessity for a valid and unexpired OFAC license for performance of obligations under the Settlement Agreement. Plaintiffs' above-quoted explanation is dated January 20, 2020, before the April 25, 2019 license expired on July 31, 2020.

Plaintiffs are correct that an unexpired OFAC license under the Venezuelan Sanctions Regulations is needed for the Settlement Agreement to be valid and enforceable. Moreover, the license, by its express terms, does not apply to sanctions imposed <u>after</u> its issuance. *See* Ex. G ("This License does not authorize transactions prohibited by any law or regulation administered by the Office of Foreign Assets Control other than those listed above," and laws and regulations administered after the license are, of course, not listed). Plaintiffs themselves explain that the initial license (2018-353747-1) dated July 24, 2018, was rendered invalid by E.O. 13850 as of January 28, 2019, and only remained valid for another month pursuant to concurrently issued General

---

[6] Plaintiffs' Reply Brief in Further Support Of Their Motion for an Order Authorizing The Issuance of a Writ of *Fieri Facias* and in Opposition to Defendants' Cross-Motion to Vacate Judgment.

20

License No. 12, authorizing performance of obligations on certain pre-existing arrangements with PDVSA through February 29, 2019. After February 29, 2019, the Settlement Agreement was invalid until a renewed license (2018-353747-2) dated April 25, 2019, authorized the Settlement Agreement through its expiration on July 31, 2020. *See* Ex. G.

Plaintiffs fail to include in the above-quoted explanation that the Settlement Agreement was again rendered invalid by E.O. 13884, issued on August 5, 2019 (shortly after the renewed license dated April 25, 2019), and its implementing regulations, 31 C.F.R. § 591.407. *See* E.O. 13884 § 3(b) (prohibiting the receipt of funds from any SDN); 31 C.F.R. § 591.407, 84 Fed. Reg. 64415-02 (Nov. 22, 2019) ("the entry into a settlement agreement . . . or other judicial process purporting to transfer or otherwise alter or affect property or interests in property . . . is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to this part"). E.O. 13884 and its implementing regulations make clear that the receipt of funds, the entry into a settlement agreement, or any actions affecting property or an interest therein[7], is prohibited unless authorized pursuant to a specific license issued by OFAC. *See id.* Thus, in the absence of a current OFAC license issued after November 22, 2019 (the effective date of § 591.407), the Settlement Agreement and performance thereunder is unauthorized and invalid.

Contrary to Plaintiffs' allegation, the license cited by Plaintiffs in the Complaint does not "specifically license[] performance of obligations under the Settlement Agreement." ECF No. 1-1

---

[7] A contract, of course, is property. 31 C.F.R. § 591.309 ("The terms property and property interest include . . . contracts of any nature whatsoever."); *OKKO Bus. PE v. Lew*, 133 F. Supp. 3d 17, 25 (D.D.C. 2015) ("[T]he IEEPA is designed to give the President means to control assets that could be used by enemy aliens, and therefore the IEEPA covers interests not defined in traditional common law terms. Moreover, because OFAC is interpreting the term . . . as defined in its own regulations, OFAC's construction merits an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation." (internal citations and quotations omitted)). Therefore, any actions seeking to establish a contract or enforce a contract, are actions affecting an interest in property.

21

at ¶ 42; *see also Zevon v. Dep't Stores Nat'l Bank*, No. 12-CV-4970 CM, 2013 WL 3479432, at *4 (S.D.N.Y. July 8, 2013) ("[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." (quotation omitted)); *Subaru Distribs. Corp.*, 425 F.3d at 122 ("[T]he court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."); *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." (quotation omitted)). The license Plaintiffs have incorporated into the Complaint is both superseded by E.O. 13884 and its implementing regulations and is expired. *See* Ex. G; *see also* E.O. 13884.

The President is expressly empowered to nullify pre-existing settlement agreements by issuing executive orders and regulations pursuant to the International Emergency Economic Powers Act ("IEEPA"). 50 U.S.C. § 1702(a)(1)(B) ("[T]he President may, under such regulations as he may prescribe. . . nullify, void, prevent or prohibit . . . dealing in . . . any property in which any foreign country . . . has any interest."). "IEEPA authorizes the President, under such regulations as he may prescribe, to nullify and void transactions involving property in which a foreign country has an interest and to nullify and void any right respecting property in which a foreign country has an interest. 50 U.S.C. § 1702. . . . The very use of the words 'nullify' and 'void' persuades me that Congress intended to authorize the President to set aside preexisting transactions." *Legality of the Int'l Agreement with Iran & Its Implementing Exec. Ords.*, 4A U.S. Op. Off. Legal Counsel 302, 308 (1981) (emphasis omitted).

In an action to enforce a promissory note issued by PDVSA to the plaintiff in *Dresser-*

*Rand Co. v. Petróleos de Venezuela, S.A.*, the court held that, "as a matter of law these [OFAC] sanctions make it legally impossible here for PDVSA to pay [the plaintiff]." 439 F. Supp. 3d 270, 274 (S.D.N.Y. 2020).

Plaintiffs' Complaint on its face pleads an unlicensed, illegal agreement to transfer money from a Specially Designated National.

> **B.      The Court Cannot Enforce an Agreement to Transfer Money from an SDN That Is Illegal Under Federal Law on the Face of the Complaint.**

The Court cannot enforce a contract that is illegal under federal law. *Kornea v. Miller*, 797 F. Supp. 3d 295, 301 (S.D.N.Y. 2025) ("The JVA has as its object the sale and distribution of marijuana, acts which are illegal under federal law. The object of the JVA being illegal under federal law, the Court cannot enforce its terms."); *Kaiser Steel Corp.*, 455 U.S. at 83–84 ("It is also well established, however, that a federal court has a duty to determine whether a contract violates federal law before enforcing it. 'The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in . . . federal statutes. . . . Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power.'" (quoting *Hurd v. Hodge*, 334 U.S. 24, 34–35 (1948))); *Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A.*, No. 03 CIV. 9141(PKL), 2004 WL 1933621, at *3 (S.D.N.Y. Aug. 30, 2004) (In discussing possible violation of 12 C.F.R. § 217.3, the court explained that "a federal court has a duty to determine whether a contract violates federal law before enforcing it." (quoting *Kaiser Steel Corp.*, 455 U.S. at 83–84)).

Where Plaintiffs have both acknowledged the necessity for a valid, unexpired OFAC license in order for payments to be made under the Settlement Agreement (*see* pp. 19–21, *supra*), and Plaintiffs incorporated into the Complaint a license that is both superseded and expired (*see*

23

pp. 21–23, *supra*), the Court must refuse to enforce the illegal contract and dismiss the Complaint.

**C.    Plaintiffs Fail to Plead the Existence of a Valid Contract or Breach by Defendants.**

"Under New York law, the elements of a breach-of-contract claim are: (1) the existence of a valid contract between the parties; (2) performance by the party alleging breach; (3) failure of the breaching party to perform; and (4) damages attributable to the breach." *Small Bus. Bodyguard Inc.*, 230 F. Supp. 3d at 302; *Gristede's Operating Corp. v. Scarsdale Shopping Ctr. Assocs., LLC*, 176 A.D.3d 1185, 1188, 111 N.Y.S.3d 400, 403 (2019) ("[S]ince an essential element of a breach of contract cause of action is the existence of a valid contract, the alleged contact between an agent of the Walgreen defendants and Scardale in 2011 could not have constituted a breach of the 2006 confidentiality agreement, as that agreement was clearly and unambiguously [sic] terminated as to Store No. 90 at that time." (internal citations omitted)). Plaintiffs fail to plead the first element of their causes of action, the existence of a valid contract, and they fail to plead that Defendants failed to perform or breached the Settlement Agreement.

As explained *supra* in Part III.A, Plaintiffs have incorporated into the Complaint a superseded and expired OFAC license that does not authorize the parties to enter into the Settlement Agreement and does not permit payments to be made pursuant to the Settlement Agreement. ECF No. 1-1 at ¶ 42; Exs. F, G (entered before E.O. 13884 and § 591.407, and expired). Without a valid OFAC license, there is no valid contract. Therefore, Plaintiffs have failed to plead the first element of a breach of contract claim under their first and second causes of action.

Plaintiffs also fail to plead that Defendants breached the Settlement Agreement. Section 25 of the Settlement Agreement provides that the "laws, treaties, regulations and applicable government provisions, including those of Venezuela and the United States of America and their respective anti-corruption regulations (collectively, 'Applicable Laws') . . . will be abided in the

24

performance of the obligations of this Agreement." *See* Decker Decl. Ex. 1 § 25.0. It further states that, "none of the Parties is obliged to take or not take any action if such Party considers, at its sole option and discretion, that performing such action or not will lead to, cause or facilitate the violation of any Applicable Law." *Id*. Accordingly, the Settlement Agreement expressly provides that payment is not required if it will lead to a violation of OFAC sanctions. Plaintiffs' Complaint shows on its face that PDVSA's continued payments would have resulted in a violation of OFAC sanctions. *See* Ex. G (entered April 25, 2019, and expired July 31, 2020); E.O. 13884 § 3(b) (prohibiting "the receipt of . . . funds . . . from any such person"). For that reason, Plaintiffs have not pled a failure of performance or breach of the Settlement Agreement by Defendants. For this additional reason, Plaintiffs have failed to state a claim under their first and second causes of action for breach of contract.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Dismiss, dismiss the Complaint, and enter such other and further relief as is just and proper.

Dated: July 13, 2026

Respectfully submitted,

*/s/ Kathryn Marie Decker*
Kathryn Marie Decker
New York Bar No. 6129407
**LEÓN COSGROVE JIMÉNEZ, LLP**
One World Trade Center
85th Floor, Suite 12
New York, NY 10007
Telephone: (212) 220-6610
Email: kdecker@leoncosgrove.com

Marcos Daniel Jiménez
New York Bar No. 4881736
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor

25

Miami, Florida 33134
Telephone: (305) 740-1975
Email: mdj@leoncosgrove.com

*Counsel for Defendants Petróleos De Venezuela, S.A.; PDVSA Petróleo, S.A.; and Corpoguanipa, S.A.*

26

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that, according to the word-processing software used to prepare it, this Memorandum of Law in Support of Defendants' Motion to Dismiss contains 8,248 words for purposes of the word-count limitations of Local Civil Rule 7.1(c) and Individual Practice 4.B.i, and is therefore compliant with those requirements.

/s/ Kathryn Marie Decker
Kathryn Marie Decker

27

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 13, 2026, I caused a true and correct copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Dismiss to be filed electronically with the Clerk of the Court using the Court's CM/ECF system, which will send a copy via electronic mail to all counsel of record.

*/s/ Kathryn Marie Decker*
Kathryn Marie Decker
